Jack B. Speight
Robert T. McCue
Patrick J. Crank
Matthew D. Obrecht
SPEIGHT, McCUE & CRANK, P.C.
2515 Warren Avenue, Suite 505
P. O. Box 1709
Cheyenne, WY 82003-1709
(307) 634-2994
Fax: (307) 635-7155

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROBERT A. NAROTZKY, M.D., THOMAS A. KOPITNIK, JR., M.D., DEBRA STEELE, M.D., and CENTRAL WYOMING NEUROSURGERY, LLC,<br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF MEMORIAL HOSPITAL OF NATRONA COUNTY; WYOMING MEDICAL CENTER, INC., a Wyoming non-profit corporation; BOARD OF DIRECTORS OF WYOMING MEDICAL CENTER, INC.; MIKE REID, in his official capacity as Chairman of the Board of Directors of Wyoming Medical Center, Inc., and in his personal capacity; PAM FULKS, in her official capacity as President and Chief Executive Officer of Wyoming Medical Center, Inc., and in her personal capacity; VICKIE DIAMOND, in her official capacity as Senior Vice President and Chief Operating Officer of Wyoming Medical Center, Inc., and in her personal capacity; and MARY JANE O'CONNOR, in her official capacity as Head of Perioperative Services of Wyoming Medical Center, Inc., and in her personal capacity,<br><br>Defendants. | Civil No. 08-CV-027-B |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS REID'S AND FULKS' MOTION FOR SUMMARY JUDGMENT**

COME NOW the Plaintiffs, by and through their attorneys, Speight, McCue & Crank, P.C., and in response to Defendants Reid's and Fulks' Motion for Summary Judgment state as follows:

## INTRODUCTION[1]

Defendants Mike Reid and Pam Fulks make three arguments in their Memorandum in Support of Motion for Summary Judgment:

I. Plaintiffs were not constructively discharged. Within this argument, Plaintiffs have two subparts:

   a. Plaintiffs' Resignations were Voluntary; and

   b. Plaintiffs' Working Conditions were Not Intolerable;

II. Plaintiffs Were Not Deprived of a Liberty Interest in Their Reputation; and

III. Defendant Reid and Fulks are Entitled to Qualified Immunity.

For their Response to Defendants Reid and Fulks Argument I, Plaintiffs rely on their Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment. Arguments concerning the issues raised by Reid and Fulks in Argument I are set forth on pages 21-37 of Plaintiffs' Memorandum in Opposition to Defendants Wyoming

[1] Plaintiffs hereby adopt and incorporate by reference the facts and arguments set forth in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment as if fully stated herein.

Medical Center's and Vickie Diamond's Motion for Summary Judgment. Defendants' remaining arguments will be addressed in this brief.

**STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. F.R.Civ.P 56(c); *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P 56(c); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." *Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing the summary judgment. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. *Celotex Corp. v. Catreett*, 477 U.S. 317, 325 (1986). When the non-moving party bears burden of proof at trial, the burden then shifts to it to demonstrate the existence of an essential element of its case. *Id.* To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Ford v. West*, 222 F.3d 767, 774 (10th Cir. 2000).

After a government official defendant asserts a qualified immunity defense to shield themselves from liability in their individual capacity, the burden shifts to the plaintiff to: 1) establish that the defendants' discretionary actions violated a constitutional or statutory right; and 2) that the constitutional right was established at the time of the violation such that a reasonable person in the defendants' position would know that his conduct violated that right. *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (*citing Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001); *Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir. 2006); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Once the plaintiff meets their burden of proving a clearly established constitutional right and conduct by the Defendants which violates that right, Defendants then have the burden to show that no material facts are in dispute which would defeat the claim of qualified immunity. *Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1161 (10th Cir. 1992).

"Constructive discharge occurs when an employer unlawfully creates 'working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.'" *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (*citing Fischer v. Forestwood Co.,* 525 F.3d 972, 980 (10th Cir.2008). The employer's subjective intent in creating the

constructive discharge and the employee's subjective views on the constructive discharge are irrelevant. *Id.*

Whether a constructive discharge occurred is a question of fact. *Id.* ("The existence of constructive discharge is an issue of fact to be resolved by the jury, and judgment as a matter of law is only appropriate if the evidence is susceptible to but one interpretation.") Whether the working conditions for Plaintiffs at WMC were objectively intolerable is a question of fact for a jury if Plaintiffs provide sufficient evidence to support a finding of constructive discharge. *Strickland*, 555 F.3d at 1229; *Arnold v. McClain,* 926 F.2d 963, 966 (10th Cir. 1991).

## DISCUSSION

The deposition of Elise Brennan, WMC Medical Staff attorney, for approximately the last ten years, and the Defendants' designated expert with regard to the operation of the WMC Medical Staff By-Laws, conclusively establishes that Mike Reid and Pam Fulks are not entitled to qualified immunity. Elise Brennan has testifies that the WMC Board of Directors "has the ultimate responsibility for everything going on and has an obligation to ensure that all committees are doing what they need to do…" **Appendix 15**, Brennan 4/8/09 Deposition, pp. 207-208.

When questioned about Mike Reid in particular regarding his role in the Kopitnik peer review as Chairman of the Board of Directors, Ms. Brennan stated:

> [Mike Reid] may say he's not involved in it from his perspective, that doesn't mean the board is not ultimately responsible, <u>because the board is ultimately responsible</u>, he may just not be involved in a way that makes him think he's involved, <u>but they have ultimate responsibility for everything that happens in the hospital</u>.

*Id.* at 208-09 (emphasis added). It follows that if the Board of Directors is responsible for everything that happens at WMC, that the Chairman of the Board of Directors is likewise responsible for the actions of WMC and those employees of WMC, including Defendants Fulks, Diamond, and O'Connor who have been delegated policymaking and decisional authority. *See for example Milligan-Hitt v. Board of Trustees of Sheridan County School Dist. No. 2*, 523 F.3d 1219 (10th Cir. 2008); **Appendix 18**, Diamond 9/9/08 Deposition, pp. 16 & 26-31.

Pam Fulks in her deposition has admitted that as President and CEO, she had overall responsibility for all operations of WMC. **Appendix 20**, Fulks 9/15/08 Deposition, p. 76. Fulks admitted she was in charge of every employee of WMC. *Id.* Fulks testified that Vicki Diamond, as the Chief Operating Officer of WMC, had overall control of day-to-day operations of WMC along with Fulks. *Id.* Fulks served at the pleasure of the WMC Board of Directors. *Id.*

Fulks cannot claim that she had no involvement in the decisions that led to the intolerable working environment for Plaintiffs. Working directly for the Board, Fulks had been delegated all day-to-day operational decisions as well as

strategic planning for the hospital and is accordingly liable for the acts of other policymaking and decisional employees including Diamond and O'Connor. *See for example Milligan-Hitt*, 523 F.3d 1219; **Appendix 18**, Diamond 9/3/08 Deposition, pp. 16 & 26-31.

In addition, Mike Reid and Pam Fulks were, in large part, the instigators of the actions that led to the horribly intolerable working environment for Plaintiffs.

**QUALIFIED IMMUNITY**

Defendants Reid and Fulks further claim that they are shielded by qualified immunity from liability in their individual capacities[2] for those discretionary actions which gave rise to the constructive discharge of Plaintiffs in violation of the Due Process Clause of the Fourteenth Amendment. (Reid & Fulks Memo on SJ, p. 23). To defeat a defense of qualified immunity, Plaintiffs must: 1) establish that the defendants' discretionary actions violated a constitutional or statutory right; and 2) that the constitutional right was established at the time of the violation such that a reasonable person in the defendants' position would know that his conduct violated that right. *Hesse*, 541 F.3d at 1244; *Graves*, 450 F.3d at 1218.

[2] Reid & Fulks cannot claim qualified immunity with regard to their "official capacity" status. Official capacity suits are treated as suits against the governmental entities themselves. *Elder-Keep v. Aksamit*, 460 F.3d 979, 988 (8th Cir. 2006). Governmental entities such as municipalities or counties are not entitled to qualified immunity. *Owen v. City of Independence,* 445 U.S. 622 (1980).

First, as Defendants concede, it was clearly established as of November 17, 2005 that a constructive discharge from a position in which a person has a protectable property interest may be actionable under 42 USC § 1983. (Reid & Fulks Memo, p.23). Plaintiffs have established that they had a constitutionally protected property interest in their medical staff privileges at WMC as of November 17, 2005 and that they were constructively discharged by the actions of Reid and Fulks, and the other Defendants, in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, pp. 11-21; *Hesse*, 541 F.3d at 1244; *Pearson*, 129 S.Ct. at 818. It was also clearly established by November 17, 2005 that "a person with authority or responsibility for working conditions can be held liable for constructive discharge in violation of the Due Process Clause of the Fourteenth Amendment." *Woodward v. City of Worland*, 977 F.2d 1392, 1402-03 (10th Cir. 1992). As specifically argued in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, an independent contractor, like a physician at WMC, can be constructively discharged from their privileges. *See Id.* at pp. 23-26. This law was clearly established in the Tenth Circuit as of 1995 when the *Umbehr* case was decided. *Umbehr v. McClure*, 44 F.3d 876 (10th Cir. 1995) (*aff'd by Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342 (1996)).

Defendants Reid and Fulks certainly knew that their actions violated Plaintiffs' constitutional rights as guaranteed by the Due Process Clause of the Fourteenth Amendment. *Graves*, 450 F.3d at 1218. The WMC By-Laws provided throughout calendar years 2004 – 2005 that a physician with medical staff privileges at WMC could only have his privileges terminated for cause and after he was afforded due process. *See* Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, pp. 11-20; **Appendix 52**, Deposition Exhibit 45, **Appendix 15**, Brennan 4/8/09 Deposition, pp. 78-79. The creation of the intolerable working environment at WMC in an attempt to force the Plaintiffs to resign their privileges is an implicit admission that the Plaintiffs' privileges could not be taken away without just cause and due process. As the Chairman of the Board of Directors of WMC, and CEO of WMC, respectively, Defendants Reid and Fulks knew or should have known that their actions, as more fully discussed below, would constructively discharge Plaintiffs without cause and without affording Plaintiffs due process under the WMC Medical Staff By-Laws, in violation of the Due Process Clause of the Fourteenth Amendment. A reasonable administrator or Board member in Fulks' or Reid's position would have clearly understood that they cannot force a physician to resign their medical staff privileges by creating a hostile and intolerable working environment.

As more fully explained in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, Defendant Mike Reid's conduct that led to the constructive discharge of Plaintiffs includes, at a minimum:

1. The decision to terminate the OR contract in violation of WMC By-Laws as punishment for Dr. Kopitnik questioning patient care at WMC during a meeting with the Editorial Board of the *Casper Star-Tribune.* Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, pp. 52-56;

2. The implementation of the Economic Conflict of Interest Policy, which violates WMC Medical Staff By-Law § 6.1, and was specifically targeted against Plaintiffs. *Id.* at pp. 56-59; **Confidential Appendix 6**, Deposition Exhibit 134;

3. Interference in the Peer Review process in violation of WMC By-Laws. *Id.* at pp. 38-52; **Appendix 62,** Deposition Exhibit 121;

4. The unilateral determination to conclude the Peer Review proceedings into the March 23, 2004 surgeries in violation of WMC By-Laws and Medical Staff By-Laws. *Id.*;

5. The failure to negotiate with Plaintiffs in good faith on issues critical to Plaintiffs' medical staff privileges. These actions include stating "F*** it, I don't have to sit here and take this, we are done …" at Doctors Narotzky and Kopitnik and leaving a meeting with the two surgeons. *Id.* at pp. 8-10; **Appendix 43**, Deposition Exhibit 21;

6. Advocating for the immediate suspension of Plaintiffs' medical staff privileges on October 19, 2005 and urging the WMC Board of Directors to stand together

and tell the Plaintiffs “to go to hell”. *Id.*; **Appendix 51**, Deposition Exhibit 42;

7. Removal of critical operating resources from Plaintiffs and authorizing the use of incompetent and under-trained “travelers” to replace CWN’s highly trained and competent OR team, *Id.* at pp. 52-56;

8. Appointment of a mediation team on October 27, 2005 which included conflicted and biased members. **Appendix 20**, Fulks 09/15/08 deposition, pp. 160-163;[3]

9. Participating in a plan to illegally tape record and videotape the Plaintiffs and their staff while they were conducting surgeries at WMC. *Id.* at pp. 8-9. **Appendix 60**, Deposition Exhibit 93;

10. Directing WMC staff to report the alleged theft of neurosurgery equipment to the Casper Police Department. *Id.* at pp. 59-68; and

11. A total and abject failure to require WMC Administrators or Medical Staff, despite actual knowledge of significant bias and prejudice against Plaintiffs, to comply with state and federal laws and the WMC Medical Staff Bylaws.

As more fully explained and laid out in Plaintiffs’ Memorandum in Opposition to Defendants Wyoming Medical Center and Vickie Diamond’s

[3] In their Motion in Support of Summary Judgment, Defendants Reid and Fulks state that their actions which led to the constructive discharge of Plaintiffs were conducted in furtherance of the management and operation of a hospital, and should therefore be accorded deference by the Court. See Reid & Fulk Memo in Support, p. 24 (*citing Ripley v. Wyoming Med. Ctr.*, ---F.3d--, 2009 WL 652029, *3-4(10th Cir. 2009). Of course, deference should only be given to a hospital Board’s decisions that are not “arbitrary, capricious or discriminatory.” *Id.* Plaintiffs have established that the actions of Defendants Reid and Fulks, as well as the other Defendants, were arbitrary, capricious, discriminatory, and illegal and therefore this Court should accord no deference to the decisions of the WMC Board of Directors as they relate to Plaintiffs.

Motion for Summary Judgment, Defendant Pam Fulks' conduct that led to the constructive discharge of Plaintiffs includes, at a minimum:

1. Directing Dr. Mary MacGuire to investigate the circumstances of the surgeries performed by Dr. Kopitnik on March 23, 2004 in violation of WMC By-Laws. *See* Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment at pp. 38-52; **Appendix 20**, Fulks 9/15/08 Deposition, pp. 26-29;

2. Taking no action to investigate who was leaking Peer Review information to the general public and the news media in Casper, in violation of the WMC By-Laws, Wyoming. *Id.*; **Appendix 20**, Fulks 9/15/08 Deposition, p. 59;

3. Interference in the Peer Review process in violation of WMC By-Laws. *Id.*; **Appendix 52,** Deposition Exhibit 45;

4. The recruiting of other neurosurgeons to perform surgery at WMC, including Joe Sramek and lying to Dr. Narotzky when confronted with WMC's recruitment activities. *Id.* at pp. 50-51; **Appendix 108**, Kopitnik-WMC Subpoena 1062, **Appendix 56,** Deposition Exhibit 59;

5. The decision to not renew the OR contract in violation of WMC By-Laws as punishment for Dr. Kopitnik questioning patient care at WMC during a meeting with the Editorial Board of the *Casper Star-Tribune. Id.* at pp. 52-56; **Appendix 81**, Deposition Exhibit 316;

6. Deciding to wire the CWN Operating Rooms to monitor conversations between Plaintiffs and their staff. *Id.* at pp. 8-9; **Appendix 60**, Deposition Exhibit 93;

7. Authorizing Defendant O'Connor to contact the Casper Police Department with false theft allegations directed toward Dr. Kopitnik and CWN staff. *Id.* at pp. 59-68;

**Appendix 21**, Fulks 11/17/08 Deposition, pp. 18-21; **Appendix 18**, Diamond 9/3/08 Deposition, pp. 246-256;

8. Authorizing the illegal, warrantless locker search. *Id.* at pp. 63-69; **Appendix 21,** Fulks 11/17/08 Deposition, p. 22-23; and

9. A total and abject failure to require WMC Administrators or Medical Staff, despite actual knowledge of significant bias and prejudice against Plaintiffs, to comply with state and federal laws and the WMC Medical Staff Bylaws.

Considering the aforementioned actions of Defendants Reid and Fulks, and looking at the totality of the circumstances at WMC in October and November of 2005, Defendants, individually and collectively, were responsible for the constructive discharge of Plaintiffs from their constitutionally protected medical staff privileges at WMC.

## LIBERTY INTEREST

Dr. Kopitnik was repeatedly slandered and defamed during 2004 and 2005 by WMC. These defamatory statements were part and parcel of the hostile and intolerable work environment created and maintained by WMC and the individual Defendants.

The defamatory and libelous statements include two anonymous mailings, both of which were distributed via the WMC Medical Staff mail boxes at WMC. (**Appendix 20**, Fulks 9/15/08 Deposition, pp. 57-60) One anonymous mailing, which was obviously written by some member of the Peer Review Committee because the letter contains information that should have

only been known to Peer Review Committee members accuses Dr. Kopitnik of Medicare fraud. (**Appendix 55**, Deposition Exhibit 49) The note was apparently sent to the Casper Star Tribune and the U.S. Office of the Inspector General and was signed "Troubled Patient Care Provider in Casper, Wyoming." The other note stated, "Good luck bullying your way out of this one, you prick. What goes around, comes around. It will be splendid news to read about you in the newspaper, and oh my, with the OIG." (**Appendix 54**, Deposition Exhibit 48)

In addition, as set forth in the Affidavit of Brad Wnuk, prior to 7:30 a.m. on November 1, 2005, the date after WMC reported the alleged theft of neurosurgery equipment at 5:47 p.m. on October 31, 2005, to the Casper Police Department, Officer Wnuk received a call from a Casper Star Tribune reporter inquiring whether the Casper Police Department was executing, or had executed, a search warrant for the stolen neurosurgery equipment. (**Appendix 12**, Wnuk Affidavit)

Last, but certainly not least, in early 2005, Mary MacGuire, the Chairman of the Department of Surgery and Dr. Kopitnik's chief persecutor during the sham and biased peer review conducted with regard to Dr. Kopitnik, informed Dr. Steven Beer, a Cheyenne neurosurgeon, that "the members of the peer review committee would never consent to allow Dr. Kopitnik to do surgery on members of their family." Dr. Scaling, the Chairman of the Peer Review

Committee, has said that this statement is false. (*See* **Appendix 8**, Scaling Affidavit 10/5/07, ¶4)

Unfortunately, the Tenth Circuit has adopted such a stringent test to establish the violation of a liberty interest in one's reputation that only the report of the false theft allegations to the *Casper Star Tribune* may be actionable. In order to give rise to an actionable liberty interest claim, the Plaintiffs must establish: (1) that statements made by the Defendants impugned their good name, reputation, honor or integrity; (2) that the statements were false; (3) that the statements occurred in the course of terminating the employee or foreclosed other employment opportunities;[4] and (4) that the statements were published. *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1223 (10th Cir. 2000). All four elements must be satisfied to demonstrate a deprivation of Plaintiffs' liberty interests. *Id.*

There is no doubt that some insider at WMC reported to the Casper Star Tribune sometime after 5:47 p.m. on October 31, 2005, and 7:30 a.m. on November 1, 2005, that staff and/or physicians of CWN stole neurosurgery equipment from WMC. Based on discovery to date, only a handful of WMC employees or board members, including Reid, Fulks, Diamond and O'Connor, even knew about the alleged thefts. The statement was patently false and certainly occurred during the course of terminating Dr. Kopitnik via his

[4] Recent Tenth Circuit cases suggest that this third factor should be composed in the conjunctive, rather than the disjunctive. *See Renaud v. Wyoming Dept. of Family Serv.,* 203 F.3d 723, 728 n.1 (10th Cir. 2000); *Darr v. Town of Telluride*, 495 F.3d 1243, 1255 (10th Cir. 2007)

constructive discharge from WMC. The statements were ultimately published in the Casper Star Tribune and certainly impugned the reputation of Dr. Kopitnik, CWN and CWN staff. The wild circulating rumors actually caused Detective Tim Weinhandl to attend a medical staff meeting to specifically tell the medical staff that Dr. Kopitnik's arrest was not imminent and was not being contemplated by the Casper Police Department. (*See* **Appendix 65**, Deposition Exhibit 152 at CWN 3695) There are certainly materially disputed facts on these elements that would preclude summary judgment.

All elements can be established but for showing that the Defendants' "statements . . . foreclosed other employment opportunities." Despite the incredible stigma and profession harm to CWN and Dr. Kopitnik's professional reputation, Dr. Kopitnik cannot point to a specific job lost based on WMC's willful conduct. Considering the Tenth Circuit's recent dicta that the statements must have both foreclosed other employment opportunities **and** have been made in the course of the employee's termination, *see* Footnote 1, *supra*, it appears that the Court has no choice but to grant the Defendants' request for summary judgment with regard to the Liberty Interest alleged in Plaintiffs' Complaint.

## CONCLUSION

Defendants Reid and Fulks are liable for the constructive discharge of Plaintiffs' from their protected property interest in their medical staff privileges at WMC in violation of the Due Process Clause of the Fourteenth Amendment.

Reid and Fulks had responsibility and authority for the work environment at WMC whereby they were able to create a hostile work environment for Plaintiffs that led to Plaintiffs' constructive discharge from WMC on November 17, 2005. Defendants are not shielded from liability for their actions that constructively discharged Plaintiffs from WMC through the defense of qualified immunity. As of November 17, 2005, Defendants Reid and Fulks knew, or should have known that their actions would result in the constructive discharge of Plaintiffs in violation of the Due Process Clause of the Fourteenth Amendment.

DATED this 13th day of April, 2009.

SPEIGHT, McCUE & CRANK, P.C.

By: /s/ Patrick J. Crank

John B. "Jack" Speight, #4-0983
Robert T. McCue, #5-2439
Patrick J. Crank, #5-2305
Matthew D. Obrecht, #6-4107
P.O. Box 1709
Cheyenne, WY 82003
(307) 634-2994
Fax: (307) 635-7155

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

This is to certify that on the 13th day of April, 2009, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Mark Gifford<br>Gifford Law Offices<br>P.O. Box 2508<br>Casper, WY 82601<br>mark@giffordbrinkerhoff.com | [ ] U.S. Mail<br>[ ] Fed Ex<br>[ ] Fax<br>[ ] Hand Delivered<br>[ X ] E-file |
| Scott E. Ortiz<br>Steve Emery<br>Williams Porter Day & Neville, P.C.<br>P.O. Box 10700<br>Casper, WY 82601<br>sortiz@wpdn.net<br>semery@wpdn.net | [ ] U.S. Mail<br>[ ] Fed Ex<br>[ ] Fax<br>[ ] Hand Delivered<br>[ X ] E-file |
| Kate Fox<br>Davis & Cannon, LLP<br>P.O. Box 43<br>Cheyenne, WY 82003-0043<br>kate@davisandcannonchey.com | [ ] U.S. Mail<br>[ ] Fed Ex<br>[ ] Fax<br>[ ] Hand Delivered<br>[ X ] E-file |
| Anna S. Peckham<br>Davis & Cannon, LLP<br>P.O. Box 728<br>Sheridan, WY 82801<br>anna@davisandcannon.com | [ ] U.S. Mail<br>[ ] Fed Ex<br>[ ] Fax<br>[ ] Hand Delivered<br>[ X ] E-file |
| W. W. Reeves<br>Anna M. Reeves Olson<br>Park Street Law Office<br>242 South Park Street<br>Casper, WY 82601<br>wwr@parkstreetlaw.com<br>aro@parkstreetlaw.com | [ ] U.S. Mail<br>[ ] Fed Ex<br>[ ] Fax<br>[ ] Hand Delivered<br>[ X ] E-file |

/s/ Patrick J. Crank