Jack B. Speight
Robert T. McCue
Patrick J. Crank
Matthew D. Obrecht
SPEIGHT, McCUE & CRANK, P.C.
2515 Warren Avenue, Suite 505
P. O. Box 1709
Cheyenne, WY 82003-1709
(307) 634-2994
Fax: (307) 635-7155

ATTORNEYS FOR PLAINTIFFS

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROBERT A. NAROTZKY, M.D., THOMAS A. KOPITNIK, JR., M.D., DEBRA STEELE, M.D., and CENTRAL WYOMING NEUROSURGERY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF TRUSTEES OF MEMORIAL HOSPITAL OF NATRONA COUNTY; WYOMING MEDICAL CENTER, INC., a Wyoming non-profit corporation; BOARD OF DIRECTORS OF WYOMING MEDICAL CENTER, INC.; MIKE REID, in his official capacity as Chairman of the Board of Directors of Wyoming Medical Center, Inc., and in his personal capacity; PAM FULKS, in her official capacity as President and Chief Executive Officer of Wyoming Medical Center, Inc., and in her personal capacity; VICKIE DIAMOND, in her official capacity as Senior Vice President and Chief Operating Officer of Wyoming Medical Center, Inc., and in her personal capacity; and MARY JANE O'CONNOR, in her official capacity as Head of Perioperative Services of Wyoming Medical Center, Inc., and in her personal capacity, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil No. 08-CV 027-B |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT MARY JANE O'CONNOR'S MOTION FOR SUMMARY JUDGMENT**

COME NOW Plaintiffs, by and through their attorneys, Speight, McCue & Crank, P.C., and in response to Defendant Mary Jane O'Connor's Motion for Summary Judgment state as follows:

## INTRODUCTION[1]

Defendant Mary Jane O'Connor claims that the Court should grant her summary judgment for the following reasons:

1. O'Connor was not Plaintiffs' employer or supervisor and is, therefore, an improper party;

2. O'Connor is entitled to qualified immunity;

3. The Plaintiffs were not constructively discharged from their privileges at WMC and voluntarily resigned their privileges;

4. Plaintiffs were not deprived of a liberty interest in their good names and reputations; and

5. Plaintiffs Fourth Amendment Rights against unreasonable search and seizure were not violated.

Argument 3, *supra*, is extensively discussed in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment and will not be discussed further here except to note that there are genuine issues of material fact with regard to the <u>factual</u>

---

[1] Plaintiffs hereby adopt and incorporate by reference the facts and arguments set forth in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment as if fully stated herein.

issue of whether Plaintiffs were constructively discharged from their privileges
at WMC and the involuntariness of Plaintiffs' resignation of privileges.  *Id.,* pp.
21-37.  Viewed in the light most favorable to the Plaintiffs, as the Court must,
the Court cannot grant summary judgment to the Defendants on this issue.

Argument 4, *supra*, is addressed in the Plaintiffs' Memorandum in
Opposition to Defendants Reid's and Fulks' Motion for Summary Judgment
and will not be further addressed herein.

Argument 5, *supra*, was fully briefed in Plaintiffs' Memorandum in
Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's
Motion for Summary Judgment.  *Id.,* pp. 59-69.  We will not further address
this argument here except to note that Plaintiffs had a reasonable expectation
of privacy in their lockers at WMC on October 31, 2005.  The warrantless and
illegal search of those lockers by Mary Jane O'Connor and others violated
Plaintiffs' Fourth Amendment Rights.  This illegal and unconstitutional search
was part of the final chapter of the incredibly hostile and intolerable work
environment foist upon the Plaintiffs by Mary Jane O'Connor and other
Defendants.  Mary Jane O'Connor's false deposition testimony concerning the
search clearly shows there are genuine issues of material fact which prevent
this Court from granting summary judgment.  *Id.,* p. 65.

**STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial.  F.R.Civ.P 56(c); *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).  Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.Civ.P 56(c); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." *Seymore v. Shawyer & Sons, Inc.*, 111F.3d 794, 797 (10th Cir. 1997).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing the summary judgment. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).  The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. *Celotex Corp. v. Catreett*, 477 U.S. 317, 325 (1986).  When the non-moving party bears burden of proof at trial, the burden then shifts to it to demonstrate the existence of an essential element of its case. *Id.*  To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Ford v. West*, 222 F.3d 767, 774 (10th Cir. 2000).

After a government official defendant asserts a qualified immunity defense to shield themselves from liability in their individual capacity, the burden shifts to the plaintiff to: 1) establish that the defendant's discretionary actions violated a constitutional or statutory right; and 2) that the constitutional right was established at the time of the violation such that a reasonable person in the defendant's position would know that his conduct violated that right.  *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (*citing Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).  Once the plaintiffs meets their burden of proving a clearly established constitutional right and conduct by the Defendant which violates that right, Defendant then has the burden to show that no material facts are in dispute which would defeat the claim of qualified immunity.  *Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1161 (10th Cir. 1992).

"Constructive discharge occurs when an employer unlawfully creates 'working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.'" *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (*citing Fischer v. Forestwood Co.,* 525

F.3d 972, 980 (10th Cir.2008).  The employer's subjective intent in creating the constructive discharge and the employee's subjective views on the constructive discharge are irrelevant.  *Id.*

Whether a constructive discharge occurred is a question of fact.  *Id.* ("The existence of constructive discharge is an issue of fact to be resolved by the jury, and judgment as a matter of law is only appropriate if the evidence is susceptible to but one interpretation.")  Whether the working conditions for Plaintiffs at WMC were objectively intolerable is a question of fact for a jury if Plaintiffs provide sufficient evidence to support a finding of constructive discharge.  *Strickland*, 555 F.3d at 1229; *Arnold v. McClain,* 926 F.2d 963, 966 (10th Cir. 1991).

## **DISCUSSION**
## **Qualified Immunity**

Defendant argues that because she was not Plaintiffs' employer or supervisor, she is an improper party to this lawsuit.  This argument is baseless and must be rejected by the Court.

Defendant alleges that *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992) supports her position.  Defendant's argument is unsupported by *Woodward.*

In *Woodward*, the Tenth Circuit found that police officers who used a joint dispatch facility were entitled to qualified immunity with regard to their

alleged sexual harassment of dispatchers who worked at the dispatch facility. *Id.* at 1402-1403. The facts of *Woodward* are dramatically different than the facts in the case at bar. Here, O'Connor was the supervisor of the department of WMC where Plaintiffs worked to perform surgeries. O'Connor was, pursuant to a delegation of authority from the WMC Board of Directors, via Fulks and Diamond, the overall supervisor of Perioperative Services which included the operating rooms and associated areas, including the physicians' locker room, the gastroenterology lab, the OR recovery area, ambulatory surgery and central sterile processing of WMC. *See* **Appendix 29,** O'Connor 8/27/08 Deposition, pp. 20-21. Here, unlike *Woodward*, both Plaintiffs and Defendant O'Connor all were involved with one central state actor – WMC. In *Woodward*, the plaintiffs worked for a joint powers board that controlled the communication center and the defendant police officers worked for the City of Worland or the local sheriff's office. *Woodward,* 977 F.2d at 1394-1395.

Ms. O'Connor, in association with the WMC Board, Reid, Fulks, and Diamond, was intimately involved in controlling the environment of the hospital where Plaintiffs treated patients in the exercise of the privileges granted by WMC. Ms. O'Connor was selected by the Board of Directors to serve on a mediation team to try and mediate differences between Plaintiffs and Defendants on October 27, 2005. **Appendix 20**, Fulks 9/15/08 Deposition, pp. 160-163. Mary Jane O'Connor's selection to serve on the mediation team is

conclusive evidence of her actual control of the environment in which Plaintiffs were forced to function.  As Elise Brennan, Defendants' designed hospital expert, noted, the working environment at any hospital is jointly controlled by the members of the medical staff, the Board of Directors and the hospital administration.  **Appendix 15,** Brennan 4/7/09 Deposition, pp. 174-176; *see also* **Appendix 5**, Affidavit of Howard L. Lang, M.D.; *see also* Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment at pp. 22-23.

Having assumed the duties and responsibilities of a supervisor over the very area of WMC in which Plaintiffs were forced to use to exercise their privileges and having been actively and intimately involved in the events which actually forced that Plaintiffs to resign their privileges, O'Connor cannot avoid liability for her actions by claiming she was not the Plaintiffs' supervisor or co-employee.

As noted in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, a hospital can constructively discharge an independent contractor like a physician.  *See* Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment at pp. 23-26.  Mary Jane O'Connor, who had been delegated policy

and decision-making authority by WMC over the surgery department of the
hospital, is a proper defendant to this matter.

Defendant Mary Jane O'Connor's conduct that led directly to the
constructive discharge of Plaintiffs from WMC is set forth in Plaintiffs'
Memorandum in Opposition to Defendants Wyoming Medical Center's and
Vickie Diamond's Motion for Summary Judgment.  Her actions include, at a
minimum:

1.  Disrupting the surgeries of Doctors Kopitnik and
    Steele on October 27, 2005 while not properly
    scrubbed-in for surgery, thereby jeopardizing patient
    safety.  Plaintiffs' Memorandum in Opposition to
    Defendants Wyoming Medical Center's and Vickie
    Diamond's Motion for Summary Judgment at pp. 59-
    69 and appendices cited therein;

2.  Participating on a mediation team on October 27, 2005
    (the same day she disrupted Kopitnik's and Steele's
    surgeries) even though she was severely biased and
    prejudiced against Plaintiffs.  *Id.,* pp. 4-5 and
    **Appendix 20**, Fulks 09/15/08 Deposition, pp. 160-
    163;

3.  Directing WMC Security to report the false theft
    allegations against Dr.  Kopitnik and CWN staff to the
    Casper Police Department on October 31, 2005; *Id.,*
    pp. 59-69; **Appendix 21**, Fulks 11/17/08 Deposition,
    pp. 18-21, *see* **Appendix 18**, Diamond 9/3/08
    Deposition, pp. 246-256, *see* **Appendix 35**, Schilling
    1/13/09 Deposition pp. 91-92;

4.  Falsely reporting to the Casper Police Department that
    Dr. Kopitnik is seen removing WMC property from the
    hospital in a surveillance video on October 31, 2005,
    *Id.*;

5.      Conducting and supervising the illegal, warrantless, and nonconsensual locker search of Doctors Narotzky's and Kopitnik's lockers, as well as those of CWN staff on October 31, 2005.  *Id.*, pp. 59-69 and **Appendix 21,** Fulks 11/17/08 Deposition, pp. 22-23.

6.      Directing WMC Security to surveille Plaintiffs as well as positioning guards outside the doors of Plaintiffs' Operating Rooms on October 30-31, 2005.  *Id.*;

7.      On November 2, 2005, directing WMC employees not to transport a patient of Dr. Narotzky's from the Emergency Room at WMC to the Operating Rooms until O'Connor arrived at the hospital, thereby creating an hour delay in the start of the patient's surgery and contributing to the death of the patient.  *Id.,* pp. 6-7.

Considering the aforementioned actions of Defendant O'Connor and looking at the totality of the circumstances at WMC in October and November of 2005, O'Connor and her fellow Defendants, individually and collectively, were responsible for the constructive discharge of Plaintiffs from their constitutionally protected medical staff privileges at WMC.

Defendant O'Connor cannot be granted qualified immunity in this matter.  To defeat a defense of qualified immunity Plaintiffs must: 1) establish that the defendants' discretionary actions violated a constitutional or statutory right; and 2) that the constitutional right was established at the time of the violation such that a reasonable person in the defendants' position would know that his conduct violated that right.  *Hesse*, 541 F.3d at 1244; *Graves*, 450 F.3d at 1218.

First, as Defendants Fulks and Reid conceded, it was clearly established as of November 17, 2005 that a constructive discharge from a position in which a person has a protectable property interest may be actionable under 42 U.S.C § 1983.  (Reid & Fulks Memo, p. 23).  Plaintiffs have established that they had a constitutionally protected property interest in their medical staff privileges at WMC as of November 17, 2005 and that they were constructively discharged by the actions of O'Connor, and the other Defendants, in violation of the Due Process Clause of the Fourteenth Amendment.  Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, pp. 11-26; *Hesse*, 541 F.3d at 1244; *Pearson*, 129 S.Ct. at 818.  It was also clearly established by November 17, 2005 that "a person with authority or responsibility for working conditions can be held liable for constructive discharge in violation of the Due Process Clause of the Fourteenth Amendment."  *Woodward v. City of Worland*, 977 F.2d 1392, 1402-03 (10th Cir. 1992).  As specifically argued in Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, an independent contractor, like a physician at WMC, can be constructively discharged from their privileges.  *See Id.* at pp. 23-26.  This law was clearly established in the Tenth Circuit as of 1995 when the *Umbehr* case was decided.  *Umbehr v. McClure*, 44 F.3d 876 (10th Cir. 1995)

(*aff'd by Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342 (1996)).

Defendant O'Connor certainly knew that her actions violated Plaintiffs' constitutional rights as guaranteed by the Due Process Clause of the Fourteenth Amendment. *Graves*, 450 F.3d at 1218. The WMC By-Laws in effect throughout calendar years 2004 – 2005 clearly establish that a physician with medical staff privileges at WMC could only have his privileges terminated for cause and after he was afforded due process. *See* Plaintiffs' Memorandum in Opposition to Defendants Wyoming Medical Center's and Vickie Diamond's Motion for Summary Judgment, pp. 11-21; **Appendix 52**, Deposition Exhibit 45, **Appendix 15**, Brennan 4/8/09 Deposition, pp. 78-79. The creation of the intolerable working environment at WMC in an attempt to force the Plaintiffs to resign their privileges is an implicit admission that the Plaintiffs' privileges could not be taken away without just cause and due process. As a member of hospital administration in charge of the surgery department, O'Connor knew or should have known that her actions would constructively discharge Plaintiffs without cause and without affording Plaintiffs due process under the WMC Medical Staff By-Laws, in violation of the Due Process Clause of the Fourteenth Amendment. Any reasonable administrator in her position would have know that the disruption of surgeries, falsely accusing medical staff members of

crimes, and illegally searching other persons' property could give rise to a hostile work environment claim.

As established herein, O'Connor had the authority and responsibility for the creation of the hostile and intolerable working conditions that Plaintiffs were subjected to at WMC.  Defendant O'Connor was also responsible and liable with the other Defendants, individually and collectively, for the creation of the intolerable working conditions to which Plaintiffs were subjected at WMC.  Defendant O'Connor cannot be granted qualified immunity.

## CONCLUSION

Defendant O'Connor is liable for the constructive discharge of Plaintiffs' from their protected property interest in their medical staff privileges at WMC in violation of the Due Process Clause of the Fourteenth Amendment. Defendant O'Connor had responsibility and authority for the work environment in areas of the hospital including the Operating Rooms, ICU and Central Sterile Processing in which Plaintiffs performed their surgeries, saw their patients, and relied on for critical support.  With the control of these areas of the hospital, O'Connor was able to create a hostile work environment for Plaintiffs that led to Plaintiffs' constructive discharge from WMC on November 17, 2005.  Defendant O'Connor is not shielded from liability for her actions that constructively discharged Plaintiffs from WMC through the defense of qualified immunity.  As of November 17, 2005, a responsible hospital administrator in O'Connor's

position would have understood that her actions could result in the

constructive discharge of Plaintiffs in violation of the Due Process Clause of the

Fourteenth Amendment.  There are numerous contested issues of material fact

which preclude the Court from granting summary judgment to Mary Jane

O'Connor in this matter.

        DATED this 13th day of April, 2009.

                                                  SPEIGHT, McCUE & CRANK, P.C.


                                        By:   /s/ Patrick J. Crank
                                                John B. "Jack" Speight, #4-0983
                                                  Robert T. McCue, #5-2439
                                              Patrick J. Crank, #5-2305
                                              Matthew D. Obrecht, #6-4107
                                            P.O. Box 1709
                                            Cheyenne, WY  82003
                                            (307) 634-2994
                                            Fax:  (307) 635-7155

                                        ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that on the 13th day of April, 2009, a true and correct copy of the foregoing was served upon counsel as follows:

Mark Gifford                                   [   ]  U.S. Mail
Gifford Law Offices                            [   ]  Fed Ex
P.O. Box 2508                                  [   ]  Fax
Casper, WY  82601                              [   ]  Hand Delivered
mark@giffordbrinkerhoff.com                    [ X ]  E-file

Scott E. Ortiz                                 [   ]  U.S. Mail
Steve Emery                                    [   ]  Fed Ex
Williams Porter Day & Neville, P.C.            [   ]  Fax
P.O. Box 10700                                 [   ]  Hand Delivered
Casper, WY  82601                              [ X ]  E-file
sortiz@wpdn.net
semery@wpdn.net

Kate Fox                                       [   ]  U.S. Mail
Davis & Cannon, LLP                            [   ]  Fed Ex
P.O. Box 43                                    [   ]  Fax
Cheyenne, WY  82003-0043                       [   ]  Hand Delivered
kate@davisandcannonchey.com                    [ X ]  E-file

Anna S. Peckham                                [   ]  U.S. Mail
Davis & Cannon, LLP                            [   ]  Fed Ex
P.O. Box 728                                   [   ]  Fax
Sheridan, WY  82801                            [   ]  Hand Delivered
anna@davisandcannon.com                        [ X ]  E-file

W. W. Reeves                                   [   ]  U.S. Mail
Anna M. Reeves Olson                           [   ]  Fed Ex
Park Street Law Office                         [   ]  Fax
242 South Park Street                          [   ]  Hand Delivered
Casper, WY  82601                              [ X ]  E-file
wwr@parkstreetlaw.com
aro@parkstreetlaw.com

                              /s/ Patrick J. Crank